SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
J. BARRETT MARUM, Cal. Bar No. 228628
MATT R. KLINGER, Cal. Bar No. 307362
379 Lytton Avenue
Palo Alto, California 94301-1479
Telephone:  650.815.2600
Facsimile:  650.815.2601
E mail      bmarum@sheppardmullin.com
            mklinger@sheppardmullin.com

Attorneys for Creditor,
WVJP 2017-1, LP

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>Cynthia A. Smith,<br><br>   Debtor. | Case No. 18-30281-DM<br><br>Chapter 13<br><br>**MOTION FOR IN REM RELIEF FROM AUTOMATIC STAY AND, IN THE ALTERNATIVE, FOR CONVERSION TO CHAPTER 7; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><u>Preliminary Hearing:</u><br><br>Date:  April 26, 2018<br>Time:  9:30 a.m.<br>Place:  Courtroom 17<br>         450 Golden Gate Avenue<br>         San Francisco, CA 94012<br>Judge:  Hon. Dennis Montali |

# TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ............................................................................................................. 1

II. FACTUAL BACKGROUND .......................................................................................... 2

    A. The Debtor's History of Bankruptcy Filings and Dismissals ........................... 2

    B. The Background to WVJP's Claim Against the Debtor ................................. 3

    C. The Debtor's Prior Use of Bankruptcy to Frustrate a Trustee's Sale of the Subject Property ............................................................................................. 5

    D. The Value of, and Claims Secured By, the Subject Property ........................ 5

III. STAY RELIEF IS WARRANTED UNDER SEVERAL PROVISIONS OF THE BANKRUPTCY CODE .......................................................................................... 7

    A. *In Rem* Stay Relief is Warranted Because the Debtor Has Engaged in a Scheme to Delay and Hinder Creditors with an Interest in the Subject Property ........................................................................................... 7

    B. In the Alternative to *In Rem* Relief, Relief from the Automatic Stay Pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2) is Appropriate ................. 9

        1. Sufficient Cause Exists for Stay Relief Under 11 U.S.C. § 362(d)(1) ................................................................................ 9

        2. The Debtor Has No Equity in the Subject Property and the Subject Property is Not Needed for Reorganizing, Allowing Relief Under 11 U.S.C. § 362(d)(2) ................................................... 10

IV. IN THE ALTERNATIVE TO STAY RELIEF, THE COURT SHOULD CONVERT THE CASE TO A CHAPTER 7 PROCEEDING UNDER 11 U.S.C. § 1307(c) .................................................................................................................. 11

        1. Cause Exists to Convert This Case Because of the Debtor's Bad Faith ..................................................................................... 11

        2. The Debtor has not Timely Filed a Plan, Warranting Conversion under 11 U.S.C. § 1307(c)(3) ........................................ 12

        3. Conversion is in the Best Interest of Creditors ............................... 13

V. CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*
499 B.R. 698 (9th Cir. 2013) .................................................................................... 8

*County of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.)*
317 B.R. 144 (Bankr. E.D. Cal. 2004) ....................................................................... 7

*In re Craighead*
377 B.R. 648 (Bankr. N.D. Calif. 2007) .................................................................. 11

*Cruz v. Strauss (In re Cruz)*
516 B.R. 594 (B.A.P. 9th Cir. 2014) .......................................................................... 9

*In re Faires*
34 B.R. 549 (Bankr. W.D. Wash 1983) .................................................................. 10

*In re Fernandez*
212 B.R. 361 (Bankr. C.D. Cal. 1997), *aff'd on other grounds*,
227 B.R. 174 (9th Cir. BAP 1998) and *aff'd mem.*, 208 F.3d 220 (9th Cir. 2000) ......... 7

*In re Kinney*
51 B.R. 840 (Bankr. C.D. Cal. 1985) ......................................................................... 7

*In re Leavitt*
171 F.3d 1219 (9th Cir. 1999) ................................................................................. 11

*In re Leavitt*
209 B.R. 935 (9th Cir. BAP 1997), *aff'd*, 171 F.3d 1219 (9th Cir. 1999) ................ 11

*In re Maude H. Henderson & Daniel S. Henderson, IV Irrevocable Trust*
395 B.R. 893 (Bankr. D.S.C. 2008) ........................................................................... 7

*In re Powers*
135 B.R. 980 (Bankr. C.D. Calif. 1991) .................................................................. 11

*Scripps GSB I, LLC v. A Partners, LLC (In re A Partners, LLC)*
344 B.R. 114 (Bankr. E.D. Cal. 2006) ....................................................................... 9

### DOCKETED CASES

*Peter S. Bedrossian v. Cynthia Smith*
(Case No. 458757) .................................................................................................... 3

## FEDERAL STATUTES & RULES

11 U.S.C.
    § 105(a) .................................................................................................... 7
    § 362(d)(1) ................................................................................. 1, 2, 9, 14
    § 362(d)(2) ......................................................................................... *passim*
    § 362(d)(4) ......................................................................................... *passim*
    § 521(a)(1) ............................................................................................... 3
    § 1307(c) ............................................................................................ 1, 11
    § 1307(c)(3) ..................................................................................... 12, 14

Federal Rule of Bankruptcy Procedure
    Rule 4001(a)(3) ..................................................................................... 14

## OTHER AUTHORITIES

*3 Collier on Bankruptcy* § 362.07 (16th ed. 2017) ............................................. 10

*8 Collier on Bankruptcy* § 1307.04 (16th ed. 2018) ........................................... 13

WVJP 2017-1, LP ("WVJP") hereby files this motion (the "Motion") for (i) *in rem* relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(4) with respect to the real property located at 1539 Laurel Place, Menlo Park, California 94025 (the "Subject Property") or, in the alternative, stay relief under 11 U.S.C. §§ 362(d)(1) and/or 362(d)(2) and (ii) if stay relief is not granted, for conversion of the above-captioned bankruptcy case (the "Bankruptcy Case") to chapter 7 pursuant to 11 U.S.C. § 1307(c).

## I.

## INTRODUCTION

Cynthia A. Smith, the debtor in the above-captioned case, ("Ms. Smith" or the "Debtor") is a serial pro se bankruptcy filer who has developed a habit of commencing bankruptcy cases only to have them quickly dismissed when she fails to file anything other than a petition. In 2016 alone, Ms. Smith filed for bankruptcy twice in less than four months, only to have both cases dismissed within weeks of filing because she did not comply with this Court's order to file key documents such as a list of creditors, schedules and a plan of reorganization. Now, less than two years later, Ms. Smith has again filed for bankruptcy and yet again faces the prospect of a swift dismissal because she has failed to file more than just a bare petition.

Each time Ms. Smith repeats this process, she unnecessarily and unfairly obstructs the ability of her secured creditors to recover what they are owed. For instance, with this latest bankruptcy case, Ms. Smith is obstructing the ability of WVJP to recover on a money judgment, for which WVJP has recorded an abstract of judgment in the Official Records of San Mateo County, California (the "Official Records"), where the Subject Property is located. In addition, in a prior bankruptcy case, Ms. Smith appears to have filed bankruptcy to obstruct the ability of her mortgage lender to sell the Subject Property at a foreclosure sale. Thus, Ms. Smith's history in bankruptcy clearly shows an intent to abuse the automatic stay to frustrate creditors and bad faith in filing the Bankruptcy Case. The fact Ms. Smith has filed each of her bankruptcy cases pro se and has never filed more than a petition, shows she has never had any intention of reorganizing her finances or even complying with the

Bankruptcy Code, but has only ever intended to unfairly manipulate the code to her inequitable advantage.

The Court should grant *in rem* stay relief in this case because the Debtor's last bankruptcy filing is clearly part of an oft-repeated scheme to delay and hinder creditors who are trying to exercise their rights against the Subject Property. In the alternative, the Court should grant WVJP relief from the automatic stay under either (i) § 362(d)(1) because the Debtor is clearly attempting to abuse the bankruptcy process or (ii) § 362(d)(2) because the Debtor has no equity in the Subject Property and there is absolutely no basis to believe she needs the Subject Property to reorganize.

Even if relief from stay is inappropriate in this case, the Court should convert the Bankruptcy Case to a proceeding under chapter 7 of the Bankruptcy Code because the debtor clearly filed her latest bankruptcy petition in bad faith, she has failed to file a plan of reorganization, and because conversion would be in the best interest of creditors.

## II.

## FACTUAL BACKGROUND

### A. The Debtor's History of Bankruptcy Filings and Dismissals

This is the Debtor's third bankruptcy case in less than two years. On August 10, 2016, the Debtor filed a bankruptcy petition commencing case no. 16-30883 before this Court (the "First 2016 Case"). On August 12, 2016, this Court entered its *Order for Individuals in Chapter 7 and Chapter 13 Cases to File Required Documents and Notice Re Automatic Dismissal* [Dkt. No. 4 in 16-30883] (the "Dismissal Notice"). The Dismissal Notice notified the Debtor that the First 2016 Case would be automatically dismissed if, within fourteen days, she did not file, among other things, her (i) Summary of Assets and Liabilities, (ii) all Schedules, (iii) Statement of Financial Affairs, and (iv) Chapter 13 Plan. The Debtor failed to file any of the documents identified in the Dismissal Notice. On August 30, 2016, this Court entered its *Order and Notice of Dismissal for Failure to Company* [Dkt. No. 8 in 16-30883], which dismissed the First 2016 Case.

On November 28, 2016, less than three months after the dismissal of the First 2016 Case, the Debtor filed a bankruptcy petition commencing case no. 16-31270 before this Court (the "Second 2016 Case"). On November 29, 2016, this Court entered its *Notice of Failure of Debtor(s) to Provide Statement of Social Security Number and/or List of Creditors*, which notified the Debtor that the Second 2016 Case could be dismissed within seven days if she did not file the List of Creditors required under 11 U.S.C. § 521(a)(1) [Dkt. No. 2 in 16-31270]. The Debtor not only did not file the required List of Creditors, she also did not file any other document in the Second 2016 Case other than a petition. On December 8, 2016, exactly ten days after the Debtor commenced the Second 2016 Case, this Court entered its *Order and Notice of Dismissal for Failure to Comply* [Dkt. No. 6 in 16-31270], which dismissed the Second 2016 Case.

The Debtor filed a petition commencing the above-captioned bankruptcy case (the "Third Bankruptcy Case") on March 13, 2018 [Dkt. No. 1 in 18-30281]. Notably, on the petition that initiated the Third Bankruptcy Case, the Debtor replied "No" to question 9, which asked whether she had filed for bankruptcy within the last eight years. On March 14, 2018, this Court entered its *Order for Individuals in Chapter 13 Case to File Required Documents and Notice of Automatic Dismissal*, by which the Debtor was ordered to file, among other things, her (i) Summary of Assets and Liabilities, (ii) all Schedules, (iii) Statement of Financial Affairs, and (iv) Chapter 13 Plan, by March 28, 2018 (the "2018 Requirements Order"). As of the filing of this Motion, the Debtor had still failed to comply with the 2018 Requirements Order or to file anything in the Third Bankruptcy Case other than a bare petition.

**B.     The Background to WVJP's Claim Against the Debtor**

WVJP is a creditor pursuant to its status as the assignee of a money judgment against the Debtor. The money judgment was entered against Ms. Smith on February 16, 2007 by the Superior Court of the State of California County of San Mateo in the case known as *Peter S. Bedrossian v. Cynthia Smith* (Case No. 458757) (the "State Court Action") and was in the original amount of $86,660.00 (such judgment, the "Judgment"). A copy of the

Judgment is attached to the Declaration of Anthony O'Neill filed concurrently with, and in support of, the Motion (the "O'Neill Declaration") as Exhibit A.

An Abstract of Judgment issued by the clerk in the State Court Action was recorded on March 23, 2007 as Instrument No. 2007-044462 of the Official Records (the "Abstract"). A copy of the Abstract is attached to the O'Neill Declaration as Exhibit B. Through the recording of Exhibit B, a judgment lien was created on all real property owned by Ms. Smith in San Mateo County and thereafter through the life of the Judgment (CCP 697.310(a)).

Thereafter, the Judgment was assigned to Wolverine Ventures Management, LLC ("Wolverine Ventures") as evidenced by that certain Acknowledgement of Assignment of Judgment filed in the State Court Action on September 9, 2016. On September 20, 2016 and October 14, 2016, an Amended Abstract of Judgment naming Wolverine Ventures as the Assignee of the Judgment was recorded in the Official Records as Instrument Nos. 2016-095957 and 2016-107004, respectively.

On November 9, 2016 an Amended Application For and Renewal of Judgment ("Amended Renewed Judgment") was filed in the State Court Action.

On November 29, 2016, a certified copy of the Amended Renewed Judgment was recorded as Instrument No. 2016-124853 of the Official Records. A copy of the recorded Amended and Renewed Judgment is attached as Exhibit C to the O'Neill Declaration. Through the recording of the Amended and Renewed Judgment, the judgment lien created by the recording of the Abstract was extended for ten years from October 24, 2016 (CCP 683.180(a)).

Thereafter, the Judgment was assigned to WVJP. On July 31, 2017 an Amended Abstract of Judgment (the "Amended Abstract") issued by the clerk in the State Court Action and listing WVJP as the assignee of the Judgment (as amended and renewed) was recorded as Instrument No. 2017-066001 of the Official Records. A copy of the Amended Abstract is attached to the O'Neill Declaration as Exhibit D.

On February 5, 2018, WVJP filed its *Application for Order Directing Sheriff to Sell Real Property* (the "Sale Application") in the State Court Action, by which WVJP requested

the State Court enter an order directing the Sheriff of San Mateo County to sell the Subject Property (the "Sheriff Sale Order"). A copy of the Sale Application is attached to the O'Neill Declaration as Exhibit E. The hearing on the Sale Application was scheduled to occur on March 19, 2018. The Debtor commenced the Third Bankruptcy Case just a few days before such hearing was scheduled to occur.

### C. The Debtor's Prior Use of Bankruptcy to Frustrate a Trustee's Sale of the Subject Property

On January 6, 2007, People's Choice Home Loan, Inc. recorded a deed of trust against the Subject Property as Instrument No. in the Official Records 2007-006673 (the "Trust Deed").

On October 8, 2014, a Notice of Default and Election to Sell Under Deed of Trust in connection with the Trust Deed was recorded in the Official Records as Instrument No. 2004-091914 (the "Default Notice").

On June 15, 2016 a Notice of Trustee's Sale in connection with the Trust Deed was recorded in the Official Records as Instrument No. 2016-058120 (the "Sale Notice"). According to the Sale Notice, the sale of the Subject Property was to occur on July 12, 2016 (the "Sale Date"). WVJP can find no indication in the public record that the Subject Property was actually sold in connection with the Sale Notice. Ms. Smith filed the First Bankruptcy Case less than a month after the Sale Date.

### D. The Value of, and Claims Secured By, the Subject Property

The Subject Property has an appraised value of $1.9 million, according to an appraisal dated as of January 22, 2018 and prepared for WVJP (the "Appraisal"). A copy of the Appraisal is attached to the Declaration of Michael Botta filed concurrently with, and in support of, this Motion.

The total value of all liens on the Subject Property, according to a Litigation Guarantee dated as of January 11, 2018 and prepared by Lawyers Title Company for Wolverine Ventures (the "Litigation Guarantee"), is approximately $1,793,266. A copy of the Litigation Guarantee is attached to the O'Neill Declaration as Exhibit F. The liens on

the Subject Property that are listed in the Litigation Guarantee (which may not reflect all accrued interest) are:

| | | |
|---|---|---|
| 1. | Deed of Trust with Towd Point Master Funding Trust 2014-NP1, U.S. Bank Trust as beneficiary | $1,000,000.00 |
| 2. | State of California Employment Development Department | $91,777.68 |
| 3. | WVJP 2017-1, LP | $170,658.38 |
| 4. | State of California Employment Development Department | $3,883.25 |
| 5. | State of California Employment Development Department | $1,889.97 |
| 6. | State of California Employment Development Department | $94,836.66 |
| 7. | State of California Employment Development Department | $3,947.49 |
| 8. | Internal Revenue Services | $12,587.03 |
| 9. | State of California Employment Development Department | $37,895.61 |
| 10. | Holly Millar | $120,500.37 |
| 11. | State of California Employment Development Department | $2,901.44 |
| 12. | State of California Franchise Tax Board | $2,576.35 |
| 13. | Grant & Weber, a Corporation | $5,647.27 |
| 14. | Western States Land Corporation | $25,000.00 |
| 15. | Reyna Vasquez | $23,112.33 |
| 16. | Internal Revenue Services | $86,567.29 |
| 17. | Nelida Cortex Contreras | $37,794 |
| 18. | Florists' Transworld Delivery | $71,697.41 |
| | **TOTAL** | **$ 1,793,266.00** |

# III.

# STAY RELIEF IS WARRANTED UNDER SEVERAL PROVISIONS OF THE BANKRUPTCY CODE

**A.** ***In Rem* Stay Relief is Warranted Because the Debtor Has Engaged in a Scheme to Delay and Hinder Creditors with an Interest in the Subject Property**

"The Supreme Court has noted that Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with matters connected with bankruptcy estates." *In re Fernandez*, 212 B.R. 361, 368 (Bankr. C.D. Cal. 1997), *aff'd on other grounds*, 227 B.R. 174 (9th Cir. BAP 1998) and *aff'd mem.*, 208 F.3d 220 (9th Cir. 2000).

"In appropriate circumstances, the Court may, on motion of a party or *sua sponte*, grant the movant *in rem* relief when there is evidence of a bad faith effort to delay a creditor with a futile bankruptcy filing or other evidence that indicates *in rem* relief is necessary to prevent abuse of process." *In re Maude H. Henderson & Daniel S. Henderson, IV Irrevocable Trust*, 395 B.R. 893, 899 (Bankr. D.S.C. 2008).

Before 2005, courts provided *in rem* relief under Section 105(a) to prevent the harm arising from abusive bankruptcy filings. *County of Fresno v. Golden State Capital Corp. (In re Golden State Capital Corp.)*, 317 B.R. 144, 150 (Bankr. E.D. Cal. 2004); *In re Kinney*, 51 B.R. 840, 844-845 (Bankr. C.D. Cal. 1985) ("To allow the mortgagee to manipulate the judicial process through needless delays of the foreclosure is a fraud on creditors. . . . Where…debtors utilize the automatic stay without the intent or ability to reorganize their financial activities or effectuate a realistic repayment plan, they are abusing the bankruptcy system.").

In 2005, this power of the court granting *in rem* relief was specifically codified as Section 362(d)(4), which provides as follows:

> with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either—

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

As can be seen from the language of the statute, a creditor with a claim secured by real property can obtain *in rem* relief under Section 362(d)(4) by showing that (i) the debtor engaged in a scheme, (ii) to delay, hinder, or defraud that creditor, and (iii) which involved multiple bankruptcy filings affecting the real property that is the subject of the requested *in rem* relief. *See Alakozai v. Citizens Equity First Credit Union (In re Alakozai)*, 499 B.R. 698, 703 (9th Cir. 2013).

In this case, WVJP is clearly a creditor with a claim against the Debtor that is secured by the Subject Property. WVJP is the assignee of the Judgment (as amended and renewed) and an abstract of the Judgment (as amended and renewed) has been filed in the Official Records, creating a lien on the Subject Property in favor of WVJP.

Moreover, the Debtor's history of bankruptcy filings constitutes a scheme to delay and hinder creditors, most recently WVJP, from recovering on their claim, including by taking action on their security interest in the Subject Property. In her latest bankruptcy petition, the Debtor has attempted to obscure this history by denying the fact she filed for bankruptcy twice in 2016. But this history and the Debtor's motive for repeatedly seeking bankruptcy protection is undeniable. In filing the First Bankruptcy Case, the Debtor sought nothing more than to hinder and delay foreclosure on the Trust Deed with as little effort as possible: by filing only a bankruptcy petition. The fact the Debtor never filed anything else in the First Bankruptcy Case shows she never intended to actually reorganize.

Similarly, in filing the Third Bankruptcy Case, the Debtor has attempted to hinder and delay WVJP's effort to secure the Sheriff Sale Order by again doing as little as possible. Once again, she has failed to file anything other than a petition. In fact, to this day, through three bankruptcy cases, the Debtor has never filed a Summary of Assets and Liabilities, a Statement of Financial Affairs, any Schedules, or a Chapter 13 Plan.

The Debtor's motive in continually filing for bankruptcy could not be more clear, and WVJP should be granted *in rem* relief to protect its claim from any further attempts by the Debtor to abuse the bankruptcy process.

**B.** **In the Alternative to *In Rem* Relief, Relief from the Automatic Stay Pursuant to 11 U.S.C. §§ 362(d)(1) and 362(d)(2) is Appropriate**

Even if this Court does not grant *in rem* relief under Section 362(d)(4), WVJP is at minimum, entitled to relief from stay in the Debtor's case pursuant to Sections 362(d)(1) and 362(d)(2).

**1.** **Sufficient Cause Exists for Stay Relief Under 11 U.S.C. § 362(d)(1)**

Section 362(d)(1) of the Bankruptcy Code provides that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay …. (1) for cause…." 11 U.S.C. § 362(d)(1). "The term 'cause' as used in § 362(d)(1) 'is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations.'" *Scripps GSB I, LLC v. A Partners, LLC* (*In re A Partners, LLC*), 344 B.R. 114, 126 (Bankr. E.D. Cal. 2006). Factors to consider in determining whether the automatic stay should be modified for cause include: (1) the number of times the debtor has filed for bankruptcy; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) the debtor's overall good faith; and (4) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules. *See Cruz v. Strauss (In re Cruz)*, 516 B.R. 594, 603-4 (B.A.P. 9th Cir. 2014). In any given case, one factor may so outweigh the others as to be dispositive. *Id.* at 604.

Here, as noted above, Ms. Smith is a serial pro se bankruptcy filer who has commenced three separate and short-lived bankruptcy cases in the last two years. Each of these cases has followed the same pattern: Ms. Smith files a bare bankruptcy petition and then flouts the Bankruptcy Code and Rules by failing to file anything else, despite receiving notice of potential dismissal. Ms. Smith's first two bankruptcy cases were promptly dismissed within weeks of their filing and this latest case is well on its way to a similar fate.

Moreover, as described above, Ms. Smith has clearly timed at least two of these cases (the First Bankruptcy Case and the Third Bankruptcy Case) to delay and hinder creditors who were seeking to exercise their lawful remedies against the Subject Property. Ms. Smith's attempt to hide her prior bankruptcies by denying them on her latest petition is further evidence of her abuse of the bankruptcy process.

### 2. The Debtor Has No Equity in the Subject Property and the Subject Property is Not Needed for Reorganizing, Allowing Relief Under 11 U.S.C. § 362(d)(2)

WVJP is also entitled to relief from stay in the Debtor's case pursuant to Section 362(d)(2). Section 362(d)(2) provides that, after notice and a hearing, a party in interest shall receive relief from stay of an act against property if: (i) the debtor has no equity in such property and (ii) such property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). A debtor has no equity in property for purposes of 362(d)(2) when the sum of (i) the debts secured by liens on the property and (ii) the costs of selling the property, which in some cases have been calculated at up to ten percent of the property's value, exceed the value of the property. *See 3 Collier on Bankruptcy § 362.07* (16th ed. 2017); *In re Faires*, 34 B.R. 549, 550 (Bankr. W.D. Wash 1983). In order for property to be necessary to an effective reorganization, a debtor must make at least some showing that such property is necessary to further the interests of the estate. *In re Faires*, 34 B.R. at 552-53.

In this case, the value of the Subject Property, according to the Appraisal, is $1,900,000. The total amount of all liens on the Subject Property, according to the Litigation Guarantee, is $1,793,266. Assuming the costs of selling the Subject Property amount to just six percent of the property's value (i.e., $114,000), the Debtor has no equity in the Subject Property, as shown below:

| Value of Subject Property | - Total of all Liens on Subject Property | - Estimated Costs of Sale (6% of Subject Property's Value) | = Debtor's Equity |
|---|---|---|---|
| $1,900,000 | $1,793,266 | $114,000 | ($7,266) |

Moreover, because the Debtor has not filed a Summary of Assets and Liabilities, Schedules, Statement of Financial Affairs or a Chapter 13 Plan in this latest bankruptcy case (or indeed in any of her three bankruptcy cases) there is absolutely no basis to conclude the Subject Property is necessary to an effective reorganization.

## IV.

## IN THE ALTERNATIVE TO STAY RELIEF, THE COURT SHOULD CONVERT THE CASE TO A CHAPTER 7 PROCEEDING UNDER 11 U.S.C. § 1307(c)

### 1. Cause Exists to Convert This Case Because of the Debtor's Bad Faith

This Court has power to convert the Bankruptcy Case to a proceeding under chapter 7 "for cause." 11 U.S.C. § 1307(c). The Debtor's bad faith can constitute cause for conversion under Section 1307(c). *In re Leavitt*, 171 F.3d 1219, 1224 (9th Cir. 1999) ("*Leavitt I*"). Bad faith is determined by the totality of the circumstances. *In re Craighead*, 377 B.R. 648, 654 (Bankr. N.D. Calif. 2007). Certain factors are indicative of bad faith, including: (1) whether the debtor misrepresented facts in her petition, unfairly manipulated the Bankruptcy Code, or otherwise filed her Chapter 13 petition in an inequitable manner; (2) the debtor's history of filings and dismissals; (3) whether the debtor only intended to defeat state court litigation; and (4) whether egregious behavior is present. *See Leavitt I*, 171 F.3d at 1223. Bad faith does not require fraudulent intent by the debtor, ill will directed toward creditors, or an affirmative attempt by the debtor to violate the law. *Leavitt I*, 171 F.3d at 1225.

Once the issue of bad faith is raised, the debtor has the burden of proving her good faith. *See In re Leavitt*, 209 B.R. 935, 940 (9th Cir. BAP 1997), *aff'd*, 171 F.3d 1219 (9th Cir. 1999); *In re Powers*, 135 B.R. 980, 997 (Bankr. C.D. Calif. 1991).

In this case, multiple indicators of the Debtor's bad faith are present. Most significantly, this Debtor has a clear history of filing bankruptcy cases that are swiftly dismissed and this latest case appears to be no exception. This Debtor has never once made any effort to avoid the dismissal of any of her bankruptcy cases or challenge either of the two dismissal orders entered by this Court in her prior bankruptcies.

Such a history shows that the Debtor is attempting to unfairly manipulate the Bankruptcy Code for an inequitable result. The Debtor's serial filings suggest that she is willing to file a bankruptcy petition without regard to her duties under the Bankruptcy Code, simply to prevent a secured creditor from enforcing its rights. Through three bankruptcy cases now, the Debtor has shown absolutely no intention to comply with the statutory requirements of a debtor in bankruptcy and has made no effort to reorganize her financial affairs. Her behavior practically guarantees that another petition will follow if this case is dismissed and a secured creditor makes any new attempt to enforce its rights.

In addition, the Debtor clearly misrepresented facts on her latest bankruptcy petition when she denied having filed any previous bankruptcies in the past eight years. Although the First 2016 Case and the Second 2016 Case were quickly dismissed, that does not mean they never happened or that they can be swept under the rug so casually (and under penalty of perjury).

The Debtor's actions here also demonstrate an intent to avoid being held accountable for a state court judgment and to defeat WVJP's effort to obtain the Sheriff Sale Order. The Debtor commenced the instant Bankruptcy Case only days before the hearing on WVJP's Sale Application was scheduled to occur. That timing alone is a strong indication of the Debtor's true intent in filing this case. Perhaps even more telling, however, is that since filing her latest petition, the Debtor has failed to take any action that would even hint at a different intent (such as aiming to reorganize her financial affairs).

Lastly, egregious behavior is present because this Debtor has repeatedly demonstrated a willingness to burden this Court and stymie her creditors, yet has failed to make any attempt to use the bankruptcy process for legitimate purposes.

**2. The Debtor has not Timely Filed a Plan, Warranting Conversion under 11 U.S.C. § 1307(c)(3)**

When a debtor's failure to file a plan of reorganization is part of a larger pattern of unreasonable delay, a court has discretion to exercise its authority to convert a bankruptcy case under Section 1307(c)(3). *See* 8 Collier on Bankruptcy § 1307.04 (16th ed. 2018).

Here, there is absolutely no reason to believe the Debtor will ever file a plan of reorganization in this case or has ever intended to file one in any of her previous cases. The Debtor has done absolutely nothing in response to this Court's 2018 Requirements Order, entered on March 14, 2018, which instructed the Debtor to file a Chapter 13 Plan (among other documents) within fourteen days or risk the dismissal of the Bankruptcy Case. This inaction is par for course for this Debtor. Her entire history in bankruptcy is nothing but a pattern of unreasonably delaying and hindering the actions of creditors by repeatedly filing bankruptcy petitions and then failing to file any other required documents.

### 3. Conversion is in the Best Interest of Creditors

This Debtor has repeatedly abused the bankruptcy process, racked up liens on the Subject Property that are nearly equal to its market value, and failed to provide more information on her financial affairs than what is provided in a bare bankruptcy petition. Rather than dismiss this case, creditors would be served best by converting it to Chapter 7 in order to (i) prevent further abuse of the bankruptcy process by this Debtor, (ii) allow a Chapter 7 trustee to investigate the Debtor's financial affairs and possibly pay creditors, and (iii) retain jurisdiction to compel the Debtor to comply with the requirements of the Bankruptcy Code.

## V.

## **CONCLUSION**

For the reasons set forth in this Motion, WVJP respectfully requests that this Court enter an order:

1. Granting *in rem* relief from the automatic stay under 11 U.S.C. § 362(d)(4) with respect to the Subject Property;

2. Authorizing the recording of such order granting *in rem* relief against the Subject Property such that the order is binding in subsequent cases pursuant to 11 U.S.C. § 362(d)(4);

3. Authorizing WVJP to exercise any of its lawful remedies with respect to the Subject Property, including;

1       4.     Waiving the stay period set forth in Federal Rule of Bankruptcy Procedure 4001(a)(3); and

      5.     Granting any other relief that this Court deems necessary and appropriate.

In the first alternative to relief under § 362(d)(4), WVJP respectfully requests that this Court, at a minimum, grant relief from the automatic stay in the Debtor's case with respect to the Subject Property pursuant to 11 U.S.C. § 362(d)(1) and/or 11 U.S.C. § 362(d)(2).

In the second alternative to relief under § 362(d)(4), WVJP respectfully requests that this Court convert the Bankruptcy Case to a proceeding under Chapter 7 pursuant to 11 U.S.C. § 1307(c)(3).

Dated: March 26, 2018

                         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                By         */s/ J. Barrett Marum*
                          J. BARRETT MARUM
                          MATT R. KLINGER

                          Attorneys for Creditor,
                          WVJP 2017-1, LP